UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

MICHAEL COLEMAN,                                    :
                                                    :
                        Plaintiff,                  :
        -against-                                   :        07 Civ. 7790  (SHS)
                                                    :
BRIAN FISCHER, Commissioner of the New York State   :
Department of Correctional Services (DOCS), in his  :
individual capacity; ANTHONY J. ANNUCCI, Deputy     :
Commissioner and Counsel for DOCS, in his individual :
capacity; LUCIEN J. LECLAIRE, JR., former Acting    :
Commissioner of DOCS in his individual capacity;    :
GLENN S. GOORD,  former Commissioner of DOCS, in    :
his individual capacity; EDWARD DEL RIO, Parole      :
Revocation Specialist, in his individual capacity; JOHN :
ZWARYCZUK, Senior Parole Officer, in his individual  :
capacity; BARBARA CUDNEY, Institutional Parole       :
Officer, in her individual capacity; SHARON HENRY,   :
Parole Officer, in her individual capacity,          :
JOHN MARTINEZ, Parole Officer, in his individual     :
capacity; and JOHN/JANE DOES 1-10  (DOCS and         :
Division of Parole Supervisory, Training, and Policy :
Personnel),                                          :
                                                    :
                        Defendants.                 :
--------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## ABSTENTION AND DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### Preliminary Statement

        Plaintiff Michael Coleman was convicted after a jury trial of Attempted Assault in the First

Degree and Assault in the Second Degree, for which he was sentenced on April 3, 2002.  Plaintiff's

sentence turned out to be illegally lenient and, on top of that windfall, plaintiff seeks money damages

from defendants individually.  Plaintiff has no statutory, procedural or constitutional right to an illegal sentence, or to money for his apparent good fortune, reaping the benefits of ten years of errors made in the sentencing courts of the State of New York, errors concurred in by judges, defense counsel, prosecutors, court administrators, Department of Correctional Services ("DOCS") and Division of Parole ("Parole") personnel and even the criminal defendants themselves.  At the very least, defendants are entitled to qualified immunity, as constitutional violations cannot be imputed to DOCS and Parole defendants who acted in good faith by adhering to the decisions of the New York State Court of Appeals, the Appellate Divisions and the trial courts.  Even if defendants herein can be found to have erred, they did not do so in bad faith.

Plaintiff's claims arise out of calculations of Post Release Supervision ("PRS") into criminal sentences made by DOCS and Parole officials who, with the courts, the defense bar and prosecutors, read a state statute mandating PRS terms for felons like plaintiff as a statute that worked automatically, by operation of law.  On August 6, 1998, the New York State Legislature enacted "Jenna's Law," which ended indeterminate sentences for criminal defendants convicted of violent felonies.[1]  See NY Penal Law §70.02.  Jenna's law also imposed a schedule of mandatory terms of PRS to be included as a part of the sentences of violent felony offenders.  See NY Penal Law §70.45.  Plaintiff does not challenge the constitutionality of the statute, or argue that his criminal sentence should not have included a period of PRS supervision, but argues simply that DOCS (and Parole) should not have enforced the statute as against him because of errors made by the sentencing judge

---

[1]  Jenna's Law was named for Jenna Grieshaber, a 22 year old nursing student who was murdered by a violent felon released from prison after serving only 2/3 of his sentence.  The purpose of the law is to end indeterminate sentencing for violent felony offenders and to ensure that a fixed period of parole supervision applies to releasees who are believed to have difficulty re-adjusting to life outside of prison.

in New York County criminal court. Because of these errors, plaintiff argues that PRS should never have been enforced, even though the law at the time of his incarceration and supervision allowed (and even required) DOCS and Parole to enforce PRS, and even though he himself did not object to PRS for two years while he was serving what he, too, believed was an automatically-imposed supervisory period.

Plaintiff does not allege that PRS was not mandatory, but rather that because of the sentencing court's failure to properly impose PRS, he should avoid the sentence, and defendants behaved unconstitutionally in believing that PRS automatically applied. The New York State Court of Appeals apparently believed just as defendants did for almost ten years. The highest New York State Court repeatedly held that PRS is a direct consequence of a criminal conviction as it has a "definite, immediate and largely automatic effect on [a] defendant's punishment." See People v. Catu, 4 N.Y.3d 242 (2005); People v. Van Deusen, 7 N.Y.3d 744 (2006); People v. Louree, 8 N.Y.3d 541 (2007); and People v. Hill, 9 N.Y.3d 189 (2007). In Hill, decided just months before plaintiff's own Article 78 proceeding (in November of 2007), the Court of Appeals did not treat PRS when unpronounced by the courts to be "a nullity;" instead, the Court of Appeals directed that Hill return to his sentencing court for that court to correct the error[2]. The Court of Appeals in Matter of Garner v. New York State Dept. Of Correctional Services, 2008 N.Y. Slip Op 03947, 2008 N.Y. LEXIS 1051 (April 29, 2008) and in People v. Sparber, 2008 N.Y. Slip Op 3946, 2008 N.Y. LEXIS 1053

---

[2]  Notwithstanding Hill, all four of New York State's Appellate Divisions then held that PRS is "a nullity" when it is neither pronounced by the sentencing judge nor recorded on the sentence and commitment sheet. See People v. Figueroa, 45 A.D.3d 297 (1st Dept. 2007); People v. Wilson, 37 A.D.3d 855 (2d Dept. 2007); Quinones v. Dept. of Correctional Services, 46 A.D.3d 1268 (3d Dept. 2007); People ex rel. Eaddy v. Goord, __ A.D.3d __ (4th Dept. 2008). These Appellate Division cases are all based on the Second Circuit's decision in Earley v. Murray, 451 F.3d 71 (2d Cir. 2006), which held that PRS is "a nullity" unless expressly pronounced by the court. In the Sparber cases, in April of 2008, the Court of Appeals significantly also did not rely on Earley v. Murray, and was not compelled to apply it to State criminal sentencing and procedure.   .

(April 29, 2008) did not invalidate sentences. <u>Garner</u> issued a writ of prohibition against DOCS to enforce unpronounced PRS, but did not declare any sentence or conviction invalid. Plaintiff's sentence and conviction in this action have not been found by any court to be invalid.

As such, <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) applies to bar plaintiff's claims: no court has overturned plaintiff's conviction or sentence. Until plaintiff can demonstrate that his sentence has been terminated and has been overturned by a competent court, he has no claim arising out of the duration of his sentence. The Article 78 court could prohibit DOCS from enforcing PRS, but its jurisdiction did not extend to the limiting the powers of a collateral court. Indeed, <u>Garner</u> held that the writ issued by the Court of Appeals prohibiting DOCS from enforcing PRS was without prejudice to resentencing.

The Court of Appeals, both in <u>Garner</u> and in the <u>People v. Sparber</u> cases (following <u>Hill</u> and <u>Catu</u>), has clearly stated that resentencing is the appropriate mechanism to remedy any alleged illegality of petitioner's term of PRS. Plaintiff should not collect money before he resorts to the sentencing court.[3] <u>See also Garner v. N.Y.S. Dept. of Correctional Services</u>, 39 A.D.3d 1019 (3d Dept. 2007), *lv granted*, 9 N.Y.3d 809 (2007); <u>People v. Thomas</u>, 35 A.D.3d 192 (1st Dept. 2006), *lv granted* 9 N.Y.3d 882 (2007); <u>People v. Sparber</u>, 34 A.D.3d 265 (1st Dept. 2006), *lv granted*, 9 N.Y.3d 882 (2007); <u>People v. Lingle</u>, 34 A.D.3d 287 (1st Dept. 2006), *lv granted*, 9 N.Y.3d 877 (2007). As such, the prospect of an ongoing material New York State criminal court proceeding

---

[3]  The District Attorney of New York County is enforcing the June 30, 2008 legislation that requires illegal sentences to be reviewed by the sentencing courts; plaintiff's illegal sentence herein is one of those sentences that must be reviewed.

involving plaintiff suggests that this Court should refrain – and defendants will contend, abstain[4] – from deciding the federal issues raised until the State law issues (which, as plaintiff concedes, give rise to the federal issues) are resolved.

Defendants respectfully submit, therefore, that in addition to granting defendants qualified immunity, this Court should dismiss plaintiff's claims on the additional grounds that (a) defendants were not personally involved in any constitutional violation, (b) plaintiff's claims are barred by <u>Heck v. Humphrey</u>, (c) plaintiff's claims are subject to dismissal under theories of abstention, (d) plaintiff's claims are barred by the applicable statute of limitations, and (e) plaintiff's claims against any defendant in his official capacity or against the State are barred by the Eleventh Amendment.

Plaintiff should be denied the double windfall of an illegally lenient sentence – a sentence he claims he was entitled to serve without a statutorily-mandated period of PRS – and money damages for the abbreviated term of the PRS portion of his sentence he served in error (which term, he would be credited for in time served upon resentencing). Plaintiff should have served both the determinate term as well as the PRS term of his sentence.

**<u>Plaintiff's Amended Complaint</u>**

The amended complaint ("complaint") alleges that in January 2002, plaintiff was sentenced to a determinate sentence of four years imprisonment for first-degree attempted assault and a concurrent determinate sentence of two years for second-degree assault. Complaint ¶26. According

---

[4] Under the <u>Younger</u> doctrine, this Court should abstain from exercising jurisdiction over this matter until criminal proceedings can be deemed terminated and state appellate remedies exhausted. Under the <u>Pullman</u> and <u>Colorado River</u> doctrines, this Court should abstain until New York courts resolve state law questions on which the constitutional adjudication depend. The People of the State of New York should have the opportunity to have plaintiff's illegal sentence corrected before plaintiff is able to use the illegal sentence as the basis to collect money.

to plaintiff, the Court did not impose mandatory PRS for either sentence and did not include PRS on the sentencing commitment sheet. Complaint ¶27. Plaintiff admits to being released from prison "on or about July 22, 2005," because of a 1/7th reduction of his sentence for good time. Complaint ¶29. Plaintiff alleges that, upon his release from prison on July 22, 2005, DOCS "administratively imposed" a five-year term of PRS. Complaint ¶9. Plaintiff does not allege that at any time prior to July 22, 2005, or indeed at any time after that release to Parole supervision (before 2007) did he object to DOCS' or Parole's alleged imposition of PRS.

Indeed, plaintiff made no objections to PRS when he was arrested for parole violations. According to plaintiff, on June 14, 2006, he was arrested for violating his PRS terms by traveling to New Jersey. Complaint ¶31. Consequently, as alleged by plaintiff, DOCS reincarnated him for violations of his PRS on June 14, 2006. Complaint ¶32. Plaintiff's only complaint at that time had to do with alleged infringements of his right to counsel at the parole revocation hearing granted him to challenge the arrest for parole violations. Plaintiff was apparently found guilty of violating his parole conditions and reincarcerated.

During that period of reincarceration, according to plaintiff, he filed a state habeas corpus petition grounded in the alleged violations of his right to counsel at his final parole revocation hearing. Complaint ¶33. On June 18, 2007 plaintiff alleges that his habeas corpus petition granted by the St. Lawrence County Supreme Court. Complaint ¶34. Plaintiff alleges he was released, "[o]n or about June 19, 2007." Complaint ¶35. Plaintiff did not object to resuming his period of PRS after release pursuant to the grant of habeas corpus.

According to plaintiff, on September 20, 2007, he filed a petition pursuant to Article 78 of the CPLR seeking an order directing DOCS to excise and delete PRS from his sentence. Complaint

¶36.  On March 14, 2008, the Kings County Supreme Court granted his petition, finding that by that time (March 2008, a month before Garner and Sparber) precedent in the Appellate Division, Second Department, compelled the finding that DOCS should be prohibited from enforcing PRS as a part of plaintiff's sentence.  Complaint ¶37.

Plaintiff asserts in his complaint that he was unlawfully imprisoned for twelve months as a consequence of PRS (he does not add that his liberty is also unlawful) and that he has "suffered and continues to suffer loss of liberty, loss of wages, psychological pain, suffering, and mental anguish." Complaint ¶38.

### Argument

### Point I

### PLAINTIFF'S DAMAGES CLAIMS UNDER 42 U.S.C. §1983 SHOULD BE DISMISSED SINCE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects government officials from civil liability in the performance of their discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Defendants' actions do not betray conduct that "violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Williams v. Smith, 781 F.2d 319, 322 (2d Cir.1986) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Moreover, the United States Supreme Court and Second Circuit have repeatedly emphasized that qualified immunity is an immunity from suit that should be decided early in a case.  Hunter v. Bryant, 502 U.S. 224, 228 (1991); Kinzer v. Jackson, 316 F.3d 139, 145 (2d Cir. 2003).

Whether qualified immunity applies generally requires a two-step analysis. Ehrlich v. Town

of Glastonbury, 348 F.3d 48 (2d Cir. 2003): (1) whether the defendant's alleged conduct violated a constitutional right in the first instance, and (2) if so, whether to ask whether the right was clearly established or whether it was objectively reasonable for the defendant to believe that his action did not violate such a law. Id. at 54-55; Poe v. Leonard, 282 F.3d 123, 132-33 (2d Cir. 2002).

In determining whether a particular right was clearly established at the time defendants acted, the Second Circuit has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the Second Circuit support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful. Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); Wright v. Smith, 21 F.3d 496, 500 (2d Cir. 1994); Benitez v. Wolf, 985 F.2d 662, 666 (2d Cir. 1993).  At the time that DOCS "administratively imposed" PRS on plaintiff's sentence, it was not clearly established, and reasonable officials  in the defendants' positions would not have known, that the "administrative imposition" of PRS by DOCS was a violation of a constitutional right. Defendants are entitled to qualified immunity.

Plaintiff alleges that the defendants violated "clearly established law," citing Hill v. United States ex. Rel. Wampler, 298 U.S. 460 (1936) and Earley v. Murray, 451 F.3d 71 (2d Cir. 2006), by having PRS "administratively imposed" upon the plaintiff's sentence. Complaint ¶¶1-2. This statement is simply inaccurate. Earley was decided  almost a  year after the time which plaintiff contends that DOCS "administratively imposed" PRS on plaintiff's sentence. Furthermore, the Supreme Court case on which the Second Circuit relied in Earley did not clearly establish, for purposes of qualified immunity, that the "administrative imposition" of a period of PRS violated a constitutional right. Defendants are entitled to qualified immunity because when "administratively

-8-

imposed" PRS appeared on plaintiff's sentence, DOCS was relying on a presumptively valid state statute.

**1. The Earley case was decided more than two years after DOCS "administratively imposed" a period of PRS on plaintiff's sentence.**

"[O]fficials performing discretionary functions are not subject to suit when such questions are resolved against them only after they have acted.... The decisive fact is not that [defendant's] position turned out to be incorrect, but that the question was open at the time he acted." Mitchell v. Forsyth, 472 U.S. 511, 535 (1985). Qualified immunity is analyzed from the perspective of the defendant at the time of the challenged conduct. Hanrahan v. Doling, 331 F.3d93, 98 (2d Cir. 2003). See also Sutton v. Village of Valley Stream, 96 F.Supp.2d 189, 194 (E.D.N.Y. 2000) ("[i]n light of the fact that Plaintiffs claim is based upon a case not decided in this circuit until 1999, and even then, acknowledged by the court to present a close question, the court holds that the right claimed was not so 'clearly established' so as to defeat a claim for qualified immunity").

In June 2006, in an appeal from a decision denying an application for a writ of habeas corpus by a New York State inmate, the United States Court of Appeals for the Second Circuit, opined that, because the judge who sentenced the petitioner to a determinate sentence of six years did not further specify that a period of post-release supervision would follow the prison term imposed, the "administrative addition" of a five-year term of post-release supervision violated the petitioner's rights under the federal constitution. Accordingly, the Second Circuit held that, if the District Court should find that the petition was timely filed, it should issue a writ excising the term of post-release supervision from the petitioner's sentence. Earley v. Murray,451 F.3d 71, rehearing denied,462 F.3d 147 (2d Cir. 2006). Defendants cannot be expected to have the foreknowledge of a Second Circuit

case that had yet to be decided. Since Earley was decided almost a year after DOCS "administratively imposed" a period of post-release supervision on plaintiffs sentence, it was not clearlyestablished at the time of the challenged conduct that such conduct constituted a constitutional violation.

The principle, moreover, applies to a petitioner whose state remedies were exhausted. Plaintiff's reliance on Earley here is thus inapposite – plaintiff has all of the state remedies he could ask for, given the Court of Appeals April 2008 decisions and the June 2008 legislation. He even has the option of seeking resentencing himself.

**2. The Supreme Court case on which the Second Circuit relied in Earley did not clearly establish, for purposes of qualified immunity, that the "administrative imposition" of a period of post-release supervision violated a constitutional right.**

The Supreme Court has held that, in order to deny the defendant qualified immunity, "the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right... [and] the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted). See also Wilson v. Layne, 526 U.S. 603, 615 (1999); Brosseau v. Haugen, 543 U.S. 194, 199 (2004); Iqbal v. Hasty, 490 F.3d 143, 167 (2d Cr. 2007) ("[T]he Plaintiffs right to additional procedures was not clearly established with the level of specificity that is required to defeat a qualified immunity defense."); and Nicholas v. Miller,189 F.3d 191, 195 (2d Cir. 1999) ("Without Second Circuit or Supreme Court authority defining with reasonable specificity [plaintiffs] right to form an inmate legal services organization, [defendants] are entitled to qualified immunity.")

In holding that the "administrative imposition" of a five-year term of post-release

supervision (when no state remedies were available) violated the petitioner's rights under the Constitution, the Earley court relied on a 70 year old Supreme Court decision, Hill v. United States ex rel. Wampler, 298 U.S. 460 (1936). Earley, 451 F.3d at 74 (which, as the district court pointed out, did not refer to the Constitution at all). At issue in Wampler was a clerk's addition to the order committing the defendant to prison, not mentioned in the court's oral sentence or in its written judgment. The added direction required that the defendant remain imprisoned until he had paid the fine imposed by the court. By statute, upon sentencing a defendant to pay a fine, the federal court was permitted, but not required, to include in its judgment a direction that the defendant remain imprisoned until the fine was satisfied. Alternatively, the fine could be enforced by execution against the defendant's property. These options were exclusive of each other. Therefore, if a direction for imprisonment was omitted from the judgment, execution against property was the sole mechanism for collecting the fine and the defendant would not be imprisoned for failure to pay. It was this discretionary determination to include a provision for imprisonment that was made by the court clerk when he added the directive to the commitment order. Wampler, 298 U.S. at 463-64. The Earley court was persuaded by Justice Cardozo's point that "[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court..." and that "[i]n any collateral inquiry, a court will close its ears to a suggestion that the sentence entered in the minutes is something other than the authentic expression of the sentence of the judge...", he was stating a constitutional rule reserving the power to specify punishment to the judiciary. Earley, 451 F.3d at 75.

The Second Circuit conceded that there were "differences" between New York's mandatory period of supervised release and the facts of Wampler. Earley, 451 F.3d at 74. Nonetheless, it found that the "broader holding" of the Wampler decision was that "[t]he judgment of the court establishes a defendant's sentence, and that sentence may not be increased by an administrator's

amendment." Id. at 75. It cannot seriously be suggested that a 70 year old Supreme Court decision, which dealt with the validity of a provision inserted by the clerk in the commitment order and did not even state that it was establishing a constitutional right,[5] should have led the defendants to reasonably believe that the "administrative imposition" of a statutorily mandated period of post-release supervision was unconstitutional. See McCullough v. Wyandanch Union Free School District, 187 F.3d 272, 278 (2d Cir. 1999) ("The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct.").

Although the Earley court did state that "Wampler thus provides clearly established Supreme Court precedent supporting Earley's claim..." (451 F.3d at 75) and that "clearly established Supreme Court precedent renders the five-year [post-release term] added to Earley's sentence by DOCS invalid..." (Id. at 76), in so holding, the Second Circuit was applying the standard set out in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides that an application for a writ of habeas corpus may not be granted unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). Earley, 451 F.3d at 74.[6] The "clearly established" test found in AEDPA and applied by the court in Earley has absolutely no bearing on the question of whether defendant's alleged conduct, when committed, violated clearly established statutory or constitutional rights of which a reasonable person would have known (whether the defendant is entitled to qualified

---

[5] The Earley court noted that Wampler "does not identify the source of the rule that it announces," but expresses its "belief" that it was based in the due process clause of the United States Constitution. Earley, 451 F.3d at 76 n.1.

[6] "'[C]learly established Federal law' under §2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63 71-72 (2003).

-12-

immunity). Although both AEDPA and the doctrine of qualified immunity employ the term "clearly established," the appellate federal courts which have addressed this issue have all held that, since AEDPA and qualified immunity further two completely different purposes, the term "clearly established" has two completely different meanings in those two contexts. In fact, since the purpose of qualified immunity is to shield state officials, most of whom are not attorneys, from liability, the term "clearly established" should be employed much more generously in determining whether defendant's alleged conduct, when committed, violated clearly established statutory or constitutional rights of which a reasonable person would have known than when federal courts are determining whether a state court's adjudication of a habeas corpus claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See, e.g., Williams v. Ballard, 466 F.3d 330, 334 (5th Cir. 2006) ("AEDPA and qualified immunity standards differ[], despite using the same terms.... This makes sense, given the different goals of AEDPA and qualified immunity. The former ensures respect for state court judgments, mandating that we defer to judicial decisions by trained lawyers; the latter shields state officials, generally untrained in the law, for their discretionary acts.").[7]

---

[7]  As the United States Court of Appeals for the First Circuit has held,

> [t]he judge-made qualified immunity doctrine strikes a balance between remedying constitutional violations and unduly hindering state actors' abilities to perform their jobs on a day-to-day basis by shielding them from liability for money damages unless their conduct transgresses the most firmly settled constitutional norms. In contrast, state judges do not face personal liability for erroneous constitutional decisions -- a bruised ego is not the functional equivalent of a monetary award. More importantly, the legislatively enacted AEDPA standard is not designed to strike a balance between such values, but to provide a means for testing the conformity of a state court's decision to the requirements of federal law. In light of these salient differences, it follows that a rule need not be quite as clear or a precedent as factually specific to rate review under the "contrary to" clause of section 2244(d)(l) as it must be to hold a state actor liable for damages under section 1983. To avoid reducing the AEDPA standard to a rubber stamp, the term "clearly established", as used by Congress in section 2254(d)( I)  must cut a wider swath.

O'Brien v. Dubois, 145 F.3d 16, 24 (1st Cir. 1998) (citations omitted).  The Ninth Circuit has similarly held in Van Tran v. Lindsey, 212 F.3d 1143, 1152 (9th Cir.), cert. denied, 531 U.S. 944 (2000) , as has the Fifth Circuit in Coleman v. Dretke, 409 F.3d 665, 668 (5th Cir. 2005).

Any question as to whether the finding by the Second Circuit that "clearly established Supreme Court precedent renders the five-year post-release term added to Earley's sentence by DOCS invalid..." somehow equates to a finding that a reasonable official in defendants' position should have known that the imposition by DOCS of the statutorily mandated period of post-release supervision was unconstitutional was laid to rest by the Supreme Court eight years ago when, in discussing the "clearly established" requirement contained in AEDPA, the court stated that:

> [w]e are not persuaded by the argument that because Congress used the words "clearly established law" and not "new rule", it meant in this section to codify an aspect of the doctrine of executive qualified immunity.... We will not assume that in a single subsection of an amendment entirely devoted to the law of habeas corpus, Congress made the anomalous choice of reaching into the doctrinally distinct law of qualified immunity, for a single phrase that just so happens to be the conceptual twin of a dominant principle in habeas law of which Congress was fully aware

Williams v. Taylor, 529 U.S. 362, 380 n. 12 (2000). Cf. Bell v. Jarvis, 236 F.3d 149, 161 n. 8 (4'" Cir. 2000) ("[U]nlike in the doctrinally distinct area of qualified immunity, our decisions in federal habeas cases do not create 'clearly established' law for state courts deciding future habeas cases. Only the Supreme Court can create 'clearly established' law for purposes of §2254(d)( I ). See Williams, 120 S.Ct. at 1523 (holding that §2254(d) explicitly 'restricts the source of clearly established law to [the Supreme] Court's jurisprudence').; United States v. Brown, 352 F.3d 654, 665 n. 9 (2d Cir. 2003) (noting that clearly established federal law for purposes of AEDPA includes only holdings of Supreme Court decisions, whereas, under qualified immunity analysis, rights can be clearly established in dicta).[8]

---

[8] Moreover, it has been held that "[e]ven if the right in question was clearly established at the time of the alleged violation, however, the defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition." Connecticut Criminal Defense Lawyers Association v. Forst, 88 F.3d 111, 123 (2d Cir. 1996) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) and Robinson v. Via, 821 F.2d 913, 321 (2d Cir. 1987).

Since the Supreme Court case on which the Second Circuit relied in Earley did not clearly establish, for purposes of qualified immunity, that the "administrative imposition" of a period of post-release supervision violated a constitutional right, the defendants are entitled to qualified immunity.

**3. When it "administratively imposed" post-release supervision on plaintiff's sentence, DOCS was relying on a presumptively valid state statute.**

The Second Circuit has held that:

> absent contrary direction, state officials are entitled to rely on a presumptively valid state statute until and unless the statute is declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning the law's constitutionality - with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.

Vives v. The City of New York, 405 F.3d 115, 117 (2d Cir. 2005) (citing Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 102-03 (2d Cir. 2003)).  As shown below, after the Sentencing Reform Act of 1998 became law and for the first eight years it was in effect, New York appellate courts, without exception, construed Penal Law §70.45(2) as designed to include by operation of law, and as therefore having the effect of automatically including, a period of post-release supervision as a mandatory component of each judicially imposed determinate sentence. Therefore, when it "administratively imposed" post-release supervision on plaintiff's sentence, DOCS was relying on a presumptively valid state statute and, accordingly, the defendants are entitled to qualified immunity.

In 1995, the New York Legislature rejected for predicate violent felony offenders the longstanding New York sentencing scheme under which a judge imposed a sentence with a minimum and a maximum term of imprisonment, and the date of the prisoner's release was determined at a later date by a parole board. Under the new legislation, judges were required to specify a fixed determinate sentence of imprisonment, not followed by parole, for predicate violent

felony offenders. Act of June 10, 1995, ch. 3, 1995 McKinney's N.Y. Laws 108.

The Sentencing Reform Act of 1998 extended determinate sentencing to first-time violent felony offenders. It also added a new section of the Penal Law mandating post-release supervision as part of every determinate sentence. Act of Aug. 6 1998, ch. I, 1998 N.Y. Laws 1, 5 (codified at Penal Law §70.45(1)).

The Legislature's Memorandum in Support of the Act stressed the need to supervise violent felony offenders (who, by virtue of their determinate sentences would not be released under parole supervision) for community safety, as well as the importance of providing support for their transition to life in the community: "The communities that encounter these former inmates deserve protection from further victimization and maximum assurance that offenders will be successfully reintegrated into society.... A period of post-release supervision is the best method for addressing the needs of the offender and the community." Memorandum in Support, ch. 1, reprinted in 1998 McKinney's N.Y. Laws 1489, 1493. Thus, "To provide greater protection to the public," the Legislative Memorandum noted, "the bill also specifies that all violent felony offenders must serve a period of post-release supervision [and] creates the methods for calculating periods of post-release supervision." 1d. at 1489.

Accordingly, until June 30, 2008, Penal Law §70.45(1) provided that "[e]ach determinate sentence also <u>includes, as a part thereof</u>, an additional period of post-release supervision."[9] (emphasis added). The length of the period is fixed at five *years,* unless the defendant is a first violent felony offender. Penal Law §70.45(2). If the defendant is sentenced as a first violent felony

---

[9]This language from Penal Law §70.45(1) was amended, effective June 30, 2008, to read, "When a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision as determined pursuant to this article." The Governor's Program Bill Memorandum that accompanied the language that enacted this change explains, "Section 3 of the bill amends Penal Law §70.45(1) to modify procedural provisions for determinate sentences to be imposed in the future. It replaces a provision that such sentences automatically include supervision terms with one that requires courts to state such terms explicitly in the course of pronouncing sentence."

offender for a class D or E violent offense, the statute requires a period of post-release supervision. As originally enacted, a three-year period for first violent felony offenders was automatically triggered unless the court altered it,

> provided, however, that when a determinate sentence is imposed pursuant to section 70.02 of this article, the court, at the time of sentence, may specify a shorter period of post-release supervision of not less than two and one-half years upon a conviction for a class B or class C violent felony offense and... not less than one and one-half years upon a conviction for a class D or class E violent felony offense.

Penal Law §70.45(2).

The provisions of subdivision (2) dealing with these less serious offenders were later amended. L. 2004, ch.738, §35. The amended statute now requires the sentencing court to specify a period of post-release supervision within the same ranges.

Persons subject to post-release supervision are supervised by the Division of Parole, and such supervision is identical to that exercised over paroled or conditionally released inmates. See, e.g., Executive Law § 259-a (4) (Division of Parole shall supervise all inmates released on parole or conditional release, or to post-release supervision); Executive Law § 259-c(2) (board of parole charged with determining conditions of release for inmates conditionally released from indeterminate sentence and inmates subject to post-release supervision).

Given that it was intended as a form of supervision comparable to parole, it is not surprising that the Legislature included no language in Penal Law §70.45 requiring the sentencing court to pronounce post-release supervision at sentencing. The statute is instead framed in language, unique in the Penal Law, that actually defines post-release supervision as an automatic corollary of the determinate sentence: "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision."

Prior to Earley, all four Appellate Divisions had held that Penal Law §70.45 operated automatically, by operation of law, to add the period of post-release supervision to the

determinate term imposed by the sentencing court.[10]

In a series of decisions, for instance, the Appellate Division, Fourth Department, read Penal Law §70.45(2) to obviate any need for the sentencing judge to specify the inclusion of the supervisory period at the time of sentence. In People v. White, 296 A.D.2d 867, 867 (4th Dept. 2002), the court held that, although no mention of it was made at sentencing or in the certificate of conviction, the term of post-release supervision "is mandatory for determinate sentences and is automatically included in the sentence." Similarly, in People v. Bloom, 269 A.D.2d 838, 838 (4th Dept. 2000), discussing the omission of a sentencing court to pronounce a term of supervision, the court held that:

> [t]here was no need for the court to specify a period of post-release supervision. Under Penal Law §70.45(2), "[t]he length of the period of `post-release supervision' is five years... unless the court specifies a shorter period....

The Third Department interpreted the statute the same way in Deal v. Goord, 8 A.D.3d 769, 769-70 (3d Dept. 2004). Holding that Supreme Court had properly refused to prohibit correctional authorities from giving effect to a term of post-release supervision not mentioned at sentence, the Third Department explained:

> [i]nasmuch as petitioner was sentenced to a determinate sentence for his commission of a violent felony in 1999, 'a period of postrelease supervision [was] automatically included' in his sentence by statute.... Since [DOCS officers] are enforcing a statutorily-required part of petitioner's sentence, they have not performed any judicial function, making prohibition an unavailable remedy....The Second Department reached the same result, concluding that, even when the sentencing
> The Second Department reached the same result, concluding that, even when the sentencing

court had not informed the defendant of the period of post-release supervision, it could not be struck from the sentence since "[a] determinate sentence without the post-release supervision constitutes

---

[10] Many of these decisions by the various Appellate Divisions were issued before DOCS "administratively imposed" PRS on plaintiff's sentence.

an illegal sentence see Penal Law §70.45)." People v. Bell,305 A.D.2d 694, 694 (2d Dept. 2003).

Similarly, the First Department, in People v. Sparber,34 A.D.3d 265 (1st Dept. 2006) and People v. Lingle,34 A.D.3d 287 (1st Dept. 2006), rejected claims that five-year mandated periods of post-release supervision were not legally binding where the court had not mentioned them at sentencing, because the mandatory term of post-release supervision was "necessarily included" with the determinate sentence, despite the court's silence. People v. Sparber, 34 A.D.3d at 265; People v. Lingle,34 A.D.3d at 289-90.[11] Because, when it "administratively imposed" post-release supervision on plaintiff's sentence, DOCS was relying on a presumptively valid state statute, the defendants are entitled to qualified immunity.

## Point II

### PLAINTIFF'S 1983 CLAIMS FAIL TO STATE A CAUSE OF ACTION AGAINST DEFENDANTS SINCE DEFENDANTS WERE NOT PERSONALLY INVOLVED IN THE ALLEGED CONSTITUTIONAL DEPRIVATION

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 42 U.S.C. §1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). When monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of personal responsibility of the defendant is required. Johnson v. Glick,481 F.2d 1028, 1034 (2d Cir.), cert. denied, 414 U.S. 1033 (1973). There is no allegation in the complaint that the defendants who did not create policy directly participated in the "administrative imposition" of post-release supervision upon the plaintiff s sentence, and the only way in which they may be held liable in a

---

[11] Indeed, prior to Earley, in requiring that a defendant be informed about PRS when entering a guilty plea, the New York State Court of Appeals interpreted Penal Law §70.45 to effectuate PRS by operation of law. See People v. Catu, 4 N.Y. 3d 242, 244 (2005) ( PRS is a "consequence" of a conviction with "largely automatic" effect).

§ 1983 action would be if: (1) after learning of the violation through a report or appeal, those defendants failed to remedy the wrong; (2) the defendants created the policy or custom under which the unconstitutional practices occurred, or allowed such policy or custom to continue; or (3) the defendants were grossly negligent in managing subordinates who caused the unlawful condition or event. <u>Williams v.Smith</u>,781 F.2d 319, 323-24 (2d Cir. 1986).

Since there is no allegation in the complaint that defendants either learned of the allegedly unlawful "administrative imposition" of PRS on the plaintiff's sentence and failed to remedy the wrong or that the defendants were somehow grossly negligent in managing DOCS or Parole employees, it seems that the plaintiff's theory of the defendants liability (although not expressly stated in the complaint) is that some defendants created the policy of "administratively imposing" PRS and others failed to correct the policy. This theory must fail since, as demonstrated above, the inclusion of PRS in plaintiff's sentence was mandated by statute. When DOCS  "administratively imposed" a period of PRS on the plaintiff's sentence, DOCS was merely doing what was directed by the Legislature.  The defendants did not create any such policy.  Moreover, as to those defendants who cannot be charged with any kind of policymaking, such as defendants Del Rio, Zwaryczuk, Cudney, Henry, and Martinez, there are no allegations whatsoever that any of them had any role in any actions taken by DOCS or its personnel, and there are no allegations whatsoever that they had any reason to believe that the plaintiff's PRS had been "administratively-imposed."  Accordingly, plaintiff cannot show the requisite personal involvement of the defendants  in the alleged constitutional deprivation and the complaint fails to state a cause of

action against the defendants.[12]

## Point III

### PLAINTIFF'S CLAIM FOR DAMAGES IS BARRED BY <u>HECK V. HUMPRHEY</u>

In <u>Heck v. Humphrey</u>, 512 U.S. 477, 481-82 (1994), the Court held that a prisoner may not

bring a Section 1983 action for damages arising from a wrongful conviction without first proving that

the conviction has been overturned.

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would render a conviction invalid, a 1983
> plaintiff must prove that the conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state tribunal authorized to make such a
> determination, or called into question by a federal court's issuance of a writ of habeas corpus,
> 28 U.S.C. 2254.

<u>Heck</u>, 512 U.S. at 486-87 (footnote omitted).  The Court adopted what is known as the "favorable

termination rule"  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must

consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his

conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can

demonstrate that the conviction or sentence has already been invalidated. But if the district court

determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any

outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the

absence of some other bar to the suit. <u>Peralta v Vasquez</u>, 467 F. 3d 98, 102 (2d Cir. 2006).

In this case, plaintiff does not meet the "favorable termination" standard.  Plaintiff cannot

show that his conviction or sentence has been overturned.  Indeed, all he can show is that an Article

78 court has issued a writ prohibiting DOCS from enforcing a sentence with mandatory PRS.  But

---

[12] See <u>Green v. Coughlin</u>, 633 F. Supp. 1116 (1986 SDNY) (Prisoner made civil right violation claim, arising out of
his  transfer and disciplinary hearing, against Commissioner of DOCS and the prison warden. Both were held not
liable as  the complaint did not adequately allege the Commissioner's or Warden's personal involvement.

that court's determination does not imply the invalidity of the sentence. Garner expressly held that the issuance of the writ of prohibition does not work to prejudice resentencings. If plaintiff's sentence were somehow terminated or overturned, Garner would not be the law. Plaintiff's sentence is illegal, and is therefore subject to review by the courts of New York as mandated by the June 30, 2008 legislation. Plaintiff's claims are barred at this time by Heck v. Humphrey.

Even if plaintiff were to argue that his time on PRS did not qualify as time subject to Heck, the law still implicates the bar to his litigation. A habeas petitioner need not be confined physically to satisfy the "in custody" requirement. Maleng v. Cook, 490 U.S. 488, 491 (1989)(per curiam). All petitioners whose convictions cause them to suffer substantial restraints not shared by the public generally come within the statute's purview, and parole has long been held to constitute such a restraint. See Jones v. Cunningham, 371 U.S. 236, 242-43 (1963); Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994); DePompei v. Ohio Adult Parole Auth., 999 F.2d 138, 140 (6th Cir. 1993). Although a prisoner in state custody cannot use a Section 1983 action to challenge "the fact or duration of his confinement," and instead must commence a federal habeas corpus proceeding seeking release from his or her purported unlawful confinement, Wilkinson v. Dotson, 544 U.S. 74, 77,(2005) (internal quotations and citations omitted), Section 1983 "remains available for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner." Id. at 81. As plaintiff remains potentially subject to PRS, and certainly for the time he was under supervision, the "in custody" requirement under § 2254(a) holds. Velez v. New York, 941 F. Supp. 300 (EDNY 1996). Indeed, "[f]ederal courts have held that Heck applies to Section 1983 actions that challenge the fact or duration of confinement based on the revocation of parole." Davis v. Cotov, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002). Accordingly, plaintiff's claim is directly

subject to the holding of Heck itself, which prohibits not only claims for injunctive relief, but damage

claims which necessarily challenge the validity of the conviction or the sentence.  See 512 U.S. at

486-87.[13]  Plaintiff's claims should be dismissed under Heck v. Humphrey.

### Point IV

**THIS COURT SHOULD ABSTAIN FROM DECIDING THIS CASE UNDER THE
*PULLMAN* AND *YOUNGER*  ABSTENTION DOCTRINES**

**1. Pullman abstention applies to the plaintiff**

Under the Pullman doctrine, a federal court may abstain from deciding a case "when

difficult and unsettled questions of state law must be resolved before a substantial federal

constitutional question can be decided." Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496

(1941).  In the Second Circuit, Pullman abstention may be appropriate when (1) an unclear state

statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of

the state law; and (3) the law is susceptible "to an interpretation by a state court that would avoid

or modify the federal constitutional issue."  Greater New York Metro. Food Council v. McGuire,

6 F.3d 75, 77 (2d Cir.1993).  This case satisfies all three requirements for Pullman abstention.

Plaintiff complains that defendants have violated constitutional rights with respect to

sentencing expectations. Pursuant to legislation enacted on June 30, 2008 all sentences under NY

Penal Law §70.45 that do not contain a term of PRS are deemed illegal. The June 30, 2008 statute

requires resentencing of all such individuals, by the appropriate sentencing courts, to either a new

---

[13]  To the extent that the Heck issue involves the Court in a review state court decisions, the Rooker-Feldman doctrine may apply to bar such review.  The Rooker-Feldman doctrine provides that lower federal courts have no subject matter jurisdiction over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court.  Moccio v. New York State Office of Court Administration, 95 F.3d 195, 197 (2d Cir. 1996).

sentence with PRS or a new sentence which is a legal sentence without PRS. Consent by the

District Attorney is necessary for a resentencing to be deemed legal without PRS.

As the status of the plaintiff's sentence is clearly illegal the State is required to adjudicate

the issue so that the plaintiff may receive finality. Accordingly, unsettled questions of state law

exist and abstention is warranted.

**2. Younger abstention applies to plaintiff**

In <u>Younger v. Harris</u>, 401 U.S. 37 (1971), the Supreme Court held that federal courts must

abstain from enjoining a pending state criminal proceeding in the absence of special

circumstances suggesting bad faith, harassment or irreparable injury that is both serious and

immediate. "<u>Younger</u> involved a criminal judicial proceeding, but subsequent decisions have

made clear that the same concerns of federalism and comity warrant abstention where state

administrative disciplinary proceedings ... are ongoing." <u>Doe v. Connecticut</u>, 75 F.3d 81, 85 (2d

Cir. 1996).  As the Supreme Court explained, "[t]he policies underlying <u>Younger</u> are fully

applicable to noncriminal proceedings when important state issues are involved." <u>Middlesex

County Ethics Comm'n v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982).

Under <u>Younger</u>, a would-be plaintiff who has been subjected to a state court proceeding

must exhaust all available state appellate remedies.  <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 608

(1975).  The fact that a constitutional issue (as framed by the federal courts) is not the direct

subject of a state court proceeding, or that a plaintiff may not be vindicated on the particular

constitutional claim that he raises in federal court, does not provide a plaintiff with independent

grounds to pursue a separate federal case: "it is sufficient under [Supreme Court precedent] that

constitutional claims may be raised in state-court judicial review of the administrative proceeding.

Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 629 (1986).  See also

Huffman, 420 U.S. at 608 (violation of obscenity laws; constitutionality may be raised in state

court proceeding); Trainor v. Hernandez, 431 U.S. 434 (1977) (constitutionality of state lien

without due process may be raised in state court proceeding).

State action concerning the plaintiff is still ongoing. As noted above, the plaintiff's

sentence is illegal according to legislation enacted on June 30, 2008. Under the June 30, 2008

statute the plaintiff can and should avail himself to resentencing. Issues pertaining to plaintiff's

sentencing are ongoing and he has not exhausted all his available state remedies. Accordingly,

abstention is warranted.

### Point V

### PLAINTIFF'S ACTION IS BARRED BY THE STATUTE OF LIMITATIONS

For §1983 actions arising in New York, the statute of limitations is three years. Eagleston v.

Guido, 41 F.3d 865, 871 (2d Cir. 1994); Pinaud v. County of Suffolk, 52 F.3d 1139, 1156 (2d Cir.

1995); Owens v. Okure, 488 U.S. 235, 250-51 (1989).[14] Accrual occurs "when the plaintiff knows

or has reason to know of the injury which is the basis of his action." Pearls v. The City of Long

Beach, 296 F.3d 76, 80 (2d Cir. 2002); Cornwell v. Robinson, 23 F.3d 694,703 (2d Cir. 1994).

Plaintiff's complaint fails to delineate the time at which the plaintiff became explicitly aware of that

PRS was "administratively imposed" on his sentence. However, the public availability of NY Penal

Law §70.45 ensures that the plaintiff is held to have knowledge of the statute.

As explained in Grayden v. Rhodes, 345 F.3d 1225, 1239 (11th Cir. Fla. 2003)., the Supreme

---

[14]The three-year limitations period applies regardless of whether the plaintiff seeks damages or a declaratory judgement. Levine v. McCabe, 357 F.Supp.2d 608, 614 (E.D.N.Y. 2005).

Court for 100 years has declared that a publicly available statute may be sufficient to provide such notice because individuals are presumptively charged with knowledge of such information. <u>Reetz v. Michigan</u>, 188 U.S. 505, 509 (1903); <u>North Laramie Land Co. v. Hoffman</u>, 268 U.S. 276, 283 (1925) ("All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them . . . ."); <u>Texaco, Inc. v. Short</u>, 454 U.S. 516, 532 (1982) ("It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property."). This principle of statutory notice was reiterated in <u>Atkins v. Parker</u>, 472 U.S. 115 (1985), when the Court wrote, "All citizens are presumptively charged with knowledge of the law . . . . The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny." Id. at 130-31.  Accordingly, the plaintiff had knowledge of the imposition of PRS as statutorily required by Penal Law §70.45  at the time of his sentencing in January 2002. This action, which was commenced six years after the plaintiff had reason to know of his alleged injury, has exceeded the appropriate statute of limitations and should be dismissed.

### Point VI

### RELIEF SHOULD BE DENIED AS BARRED BY THE ELEVENTH AMENDMENT

The Eleventh Amendment bars retrospective declaratory relief against state officials. <u>Ward v. Thomas</u>, 207 F.3d 114, 120 (2d Cir. 2000). As the Supreme Court has stated, "a declaratory judgment is not available when the result would be a partial 'end run around...'" the Eleventh Amendment's bar on retrospective awards of monetary relief. <u>Green v. Mansour</u>, 474 U.S. 64, 73 (1985). Since the complaint demands a judgment "declaring that defendants' manner of administratively adding periods of post release supervision to plaintiffs and the class members'

-26-

court-imposed sentences <u>violated</u> their rights to due process under the Fourteenth Amendment and that <u>each class member is therefore entitled to compensatory and punitive</u> <u>damages</u> flowing from the deprivation of his or her liberty interests..." (emphasis added), plaintiffs request for declaratory relief is barred by the Eleventh Amendment.

**CONCLUSION**

For all of the foregoing reasons, the Court should grant defendants' motion and issue an order dismissing the Complaint.

Dated: New York, New York
       July 29, 2008

Respectfully submitted,

ANDREW CUOMO
Attorney General of the
 State of New York
Attorney for Defendants

By:    _____S/_____
       Donald Nowve
       Michael J. Keane
       Andrew H. Meier
       Assistant Attorneys General
       120 Broadway - 24th Floor
       New York, New York 10271
       (212) 416-8550

Ruvin Levavi
    <u>On the Brief</u>