UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAWRENCE HARDY, RAMONE CROSS, and SHAWN SMITH, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

BRIAN FISCHER, in his capacity as Commissioner of the New York State Department of Correctional Services (DOCS), and in his individual capacity; ANTHONY J. ANNUCCI, in his capacity as Deputy Commissioner and Counsel for DOCS, and in his individual capacity; LUCIEN J. LECLAIRE, JR., former Acting Commissioner of DOCS, in his individual capacity; GLENN S. GOORD, former Commissioner of DOCS, in his individual capacity; and JOHN/JANE DOES 1-50 (DOCS Supervisory, Training, and Policy Personnel),

Defendants.

08 Civ. 2460 (SHS)

THOMAS GRAHAM,

Plaintiff,

-against-

BRIAN FISCHER, Commissioner of the New York State Department of Correctional Services (DOCS), in his individual capacity; ANTHONY J. ANNUCCI, Deputy Commissioner and Counsel for DOCS, in his individual capacity; LUCIEN J. LECLAIRE, JR., former Acting Commissioner of DOCS, in his individual capacity; GLENN S. GOORD, former Commissioner of DOCS, in his individual capacity; and JOHN/JANE DOES 1-50 (DOCS Supervisory, Training, and Policy Personnel), in their individual capacities,

Defendants.

08 Civ. 9634 (SHS)

MICHAEL COLEMAN,

Plaintiff,

-against-

BRIAN FISCHER, Commissioner of the New York State Department of Correctional Services (DOCS), in his individual capacity; ANTHONY J. ANNUCCI, in Deputy Commissioner and Counsel for DOCS, in his individual capacity; LUCIEN J. LECLAIRE, JR., former Acting Commissioner of DOCS, in his individual capacity; GLENN S. GOORD, former Commissioner of DOCS, in his individual capacity; EDWARD DEL RIO, Parole Revocation Specialist, in his individual capacity; JOHN ZWARYCZUK, Senior Parole Officer, in his individual capacity; BARBARA CUDNEY, Institutional Parole Officer, in her individual capacity; SHARON HENRY, Parole Officer, in her individual capacity; JOHN MARTINEZ, Parole Officer, in his individual capacity; and JOHN/JANE DOES 1-50 (DOCS and Division of Parole Supervisory, Training, and Policy Personnel),

Defendants.

07 Civ. 7790 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Various plaintiffs have brought these three actions pursuant to 42 U.S.C. § 1983 challenging the imposition and enforcement of post-release supervision ("PRS") by the New York State Department of Correctional Services ("DOCS"). Specifically, plaintiffs contend that the imposition of PRS by anyone other than a judge violates the Due Process Clause of the Fourteenth Amendment by depriving plaintiffs of their constitutional right to be sentenced only by a judge. They assert that although this right was clearly established by the U.S. Supreme Court in 1936 in *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936), and by the U.S. Court of Appeals for the Second Circuit in 2006 in *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006),

DOCS—not a judge—improperly continued to impose and enforce sentences of PRS on New York State criminal defendants pursuant to N.Y. Penal Law § 70.45. That statute mandates the imposition of PRS for certain violent offenders sentenced to determinate sentences. Defendants have moved to dismiss each of the three complaints. Because each defendant is entitled to qualified immunity or another privilege with respect to the alleged violations of plaintiffs' constitutional rights, the motions to dismiss are granted.[1]

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the complaint in each action and are presumed to be true for purposes of these motions.

#### 1. *Hardy v. Fischer*

##### a. Lawrence Hardy

On October 2, 2002, a New York state court imposed a four year determinate sentence of incarceration on Lawrence Hardy. The state court judge did not impose a term of PRS as part of Hardy's sentence and his sentencing commitment sheet did not refer to PRS. (Hardy v. Fischer Am. Compl. ("Hardy Compl.") ¶ 41-42.) The expiration date of Hardy's maximum determinate sentence was September 9, 2006, and he received a one-seventh reduction for good time, bringing his release date to February 10, 2006. DOCS—not the judge—subsequently imposed a five year term of PRS, to commence upon Hardy's release. (*Id.* ¶¶ 43-45.) On October 15, 2007, DOCS reincarcerated Hardy for alleged violations of PRS. (*Id.* ¶¶ 45-46.) Hardy was released on March 11, 2008, although he remains subject to the conditions of PRS imposed by

---

[1] The plaintiffs in the *Hardy* action bring suit against Brian Fischer and Anthony Annucci in their official, as well as individual, capacities. However, New York State and its agents and officers acting in their official capacities are not "persons" pursuant to 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the Court dismisses the claims against Fischer and Annucci in their official capacities and addresses the remaining claims only insofar as they are alleged against defendants in their individual capacities.

DOCS, including travel restrictions. (*Id.* ¶¶ 47-48.)

b. Ramone Cross

On May 24, 2002, a judge sentenced Ramone Cross to a four year determinate sentence of incarceration and a one and one half year sentence of PRS. (*Id.* ¶ 51.) After receiving credit for time served while awaiting trial, Cross's determinate sentence expired on February 20, 2003, and his judicially imposed PRS expired on August 20, 2004. (*Id.* ¶¶ 52-53.) Nonetheless, at the time of Cross's release from prison, DOCS imposed a five-year term of PRS, which was to expire on February 20, 2008. (*Id.* ¶ 54.) In August 2007, Cross was arrested and charged with promoting prison contraband. He subsequently pleaded guilty to disorderly conduct and was sentenced to fifteen days in jail. After his release in August or September 2007, Cross was informed by his parole officer that this conviction also constituted a violation of the conditions of the PRS term that DOCS had imposed on him. (*Id.* ¶¶ 55-56.) An arrest warrant was issued for Cross, but it was stayed pending the motion for a preliminary injunction in this action. (*Id.* ¶¶ 57-58.)

c. Shawn Smith

In July 2000, Shawn Smith received a determinate sentence of seven years of incarceration after his conviction on two counts of burglary in the second degree and an indeterminate sentence of two to four years for two counts of burglary in the third degree, to run concurrently. (*Id.* ¶ 62.) Smith's maximum determinate sentence expired on October 26, 2006 because of time served awaiting trial, and he was released on October 26, 2005 after a reduction for good conduct. (*Id.* ¶¶ 64-65.) Upon release, DOCS imposed five years of PRS, and, on January 16, 2007, reincarcerated Smith for allegedly violating the terms of his PRS by moving to a new home, missing a home visit with his parole officer, and skipping meetings of a drug program. (*Id.* ¶¶ 66-67.) While reimprisoned, Smith filed a petition for a writ of habeas corpus

in state court. On December 21, 2007, the Bronx County Supreme Court granted Smith's petition, finding that DOCS's imposition of PRS was illegal. (*Id.* ¶¶ 68-69; *see also Smith v. N.Y. State Div. of Parole*, No. 75043-07 (Bronx Co. Sup. Ct. Dec. 21, 2007).) After eleven months in prison, Smith was released on December 24, 2007. (Hardy Compl. ¶ 70.)

Lawrence Hardy, Ramone Cross, and Shawn Smith bring claims for damages, injunctive relief, and declaratory judgment based on violation of their rights to due process. The Court denied their request for injunctive relief in an Order and Opinion dated March 31, 2010.

2. *Graham v. Fischer*

On May 2, 2001, Thomas Graham was sentenced in Kings County Supreme Court to a determinate term of five and one half years of incarceration for one count of burglary in the second degree. That sentence did not include a term of PRS. (Graham v. Fischer Compl. ("Graham Compl.") ¶¶ 19-20.) Graham was released on August 15, 2005, although his maximum determinate sentence expired on June 1, 2006. Upon Graham's release, DOCS imposed a five year term of PRS. (*Id.* ¶¶ 24-26.) At some point after October 2006, a warrant was issued for Graham's arrest based on alleged violations of PRS, including leaving a drug program, missing visits with a parole officer, and being charged with a misdemeanor. He was reincarcerated on August 1, 2007 and ultimately sentenced to an additional fifteen months of detention. (*Id.* ¶¶ 37-39.) On January 15, 2008, a state court granted Graham's motion brought pursuant to section 440.20 of the New York Criminal Procedure Law and "declared DOCS' imposition of PRS a nullity." (*Id.* ¶ 44; *see also People v. Graham*, No. 10195/00 (Kings Co. Sup. Ct. Jan. 15, 2008)). Graham was released on January 19, 2008. (Graham Compl. ¶ 45.) Graham now brings claims for damages and declaratory relief based on alleged violations of his Fourteenth Amendment right to due process and his Fourth Amendment right to be free from unreasonable search and seizure, as well as for conspiracy to violate section 1983.

3. *Coleman v. Cudney*

Michael Coleman received a four year determinate sentence of incarceration for first degree attempted assault and a concurrent two year determinate sentence for second degree assault in January 2002, neither of which included a term of PRS. (Coleman v. Fischer Am. Compl. ("Coleman Compl.") 26-27.) Coleman's maximum determinate sentence expired on February 20, 2006 but he was released on July 22, 2005, at which point DOCS imposed five years of PRS on him. (*Id.* 28-29.) Coleman was arrested and reincarcerated on June 14, 2006 for allegedly violating the terms of his PRS by traveling to New Jersey. (*Id.* 31-32.) He was released on June 19, 2007 after filing a habeas petition based on an alleged violation of his right to counsel at his parole revocation proceeding. Coleman subsequently initiated an Article 78 proceeding and, on March 14, 2008, the state court directed DOCS to excise and delete the term of PRS from his sentence. (*Id.* ¶¶ 33-37; *see also Coleman v. N.Y. State Dep't of Corr. Servs.*, No. 36119/2007 (Kings Co. Sup. Ct. Mar. 14, 2008).) Coleman brings claims for damages and declaratory judgment based on defendants' alleged violation of his due process rights.

B. Legal History

On June 9, 2006, the Second Circuit applied the seventy year old Supreme Court decision in *Hill v. United States ex rel. Wampler* and held that DOCS's imposition of extra-judicial sentences of PRS violated federal law, entitling the petitioner to a writ of habeas corpus if the petition had been timely filed in the district court.[2] *Earley*, 451 F.3d at 76-77. Plaintiffs allege that DOCS nonetheless continued to impose and enforce PRS on them and on other similarly situated individuals despite the fact that a judge had never sentenced them to PRS. (Hardy Compl. ¶¶ 3, 36; Graham Compl. ¶ 7; Coleman Compl. ¶ 3.)

---

[2] The *Earley* decision did not address the propriety of whether New York state could move in state court to modify Earley's sentence to include a term of PRS. *See Earley*, 451 F.3d at 77 n.2.

In April 2008, the New York Court of Appeals decided *Garner v. New York State Department of Correctional Services*, 10 N.Y.3d 358, 889 N.E.2d 467 (2008) and *People v. Sparber*, 10 N.Y.3d 457, 889 N.E.2d 459 (2008), which held, *inter alia*, that PRS imposed by anyone other than a judge violates New York state law. *See Garner*, 10 N.Y.3d at 362 ("As we explained today in *People v. Sparber* . . . , the combined command of CPL 380.20 and 380.40 is that the sentencing judge—and only the sentencing judge—is authorized to pronounce the PRS component of a defendant's sentence.").

The New York state legislature subsequently passed Corrections Law § 601-d "to provide a mechanism for courts to consider resentencing defendants serving determinate sentences without court-ordered postrelease supervision terms." *People v. Williams*, --- N.Y.3d ---, 2010 NY Slip Op 1527, at * 1, 2010 WL 605257 (N.Y. Feb. 23, 2010). However, last month, the New York State Court of Appeals determined that "the Double Jeopardy Clause prohibits a court from resentencing the defendant to the mandatory term of PRS after the defendant has served the determinate term of imprisonment and has been released from confinement by DOCS." *Id.* at *11 ("We . . . conclude that, after release from prison, a legitimate expectation in the finality of a sentence arises and the Double Jeopardy Clause prevents reformation to attach a PRS component to the original completed sentence.").

C. <u>The Pending Motions</u>

Defendants have moved to dismiss the complaints pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(6), and (h)(3). They contend that Corrections Law § 601-d moots plaintiffs' claims and thus deprives the Court of subject matter jurisdiction; that they are entitled to qualified immunity because their allegedly unconstitutional acts did not violate any law that was clearly established at the time of the alleged violations; that plaintiffs' claims are barred by the statute of limitations; that the Supreme Court precedent of *Heck v. Humphrey*, 512 U.S. 477

(1994), precludes the relief plaintiffs seek; that plaintiffs have not alleged defendants' personal involvement in the alleged deprivation of their constitutional rights as required under 42 U.S.C. § 1983; that defendants were privileged in incarcerating plaintiffs for violation of PRS; that the Court should abstain from determining the merits of these actions; and that the Eleventh Amendment bars plaintiffs' claims because they challenge state policy.

## II. STANDARD OF REVIEW

For purposes of a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.*

## III. ANALYSIS

Defendants assert a broad array of various defenses to these actions. Because the Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation,'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)), and because defendants are correct that

they are entitled to qualified immunity from being sued based on plaintiffs' claims or their actions were otherwise privileged, the Court begins with the qualified immunity inquiry.[3]

A. Qualified Immunity

The doctrine of qualified immunity protects government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a right is "clearly established," courts in this Circuit assess whether: "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (internal quotations and citations omitted). Qualified immunity applies regardless of whether an official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 129 S.Ct. at 815.

Plaintiffs in each of these actions have alleged deprivation of their rights as protected by the Due Process Clause of the Fourteenth Amendment, specifically the right to be free from an administrative agency adding to their judicially imposed sentences.[4] (*See* Hardy Compl. ¶¶ 73, 76; Graham Compl. ¶ 48; Coleman Compl. ¶ 40; *see also Earley*, 451 F.3d at 76.) Thus, the

[3] While a motion to dismiss pursuant to Rule 12(b)(6) often is not the appropriate stage in which to raise an affirmative defense, the Second Circuit has written that it "see[s] no reason why even a traditional qualified immunity defense may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint," as they are here. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

[4] Each plaintiff also alleges that defendants conspired to violate section 1983 by depriving them of these same due process rights. Because the Court finds that defendants are all entitled to qualified immunity or another privilege that overcomes the individual section 1983 claims, the claims for conspiracy also fail. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995). Graham also alleges that defendants' imposition of PRS without court order also subjected him to an unreasonable search and seizure in violation of the Fourth Amendment. (Graham Compl. ¶ 54.) Even assuming, *arguendo*, that Graham's Fourth Amendment claim alleges the violation of a constitutional right, the acts alleged—administrative imposition of PRS by DOCS—are the same pre-*Earley* acts addressed by all plaintiffs' Fourteenth Amendment claims. As set forth below, there was no clearly established right to be free from purely administrative imposition of PRS at this time. Accordingly, the same qualified immunity analysis applies to Graham's Fourth Amendment claim as to those brought for alleged violations of plaintiffs' due process rights.

relevant question is whether that right was clearly established at the time of the alleged violation, when DOCS—rather than a judge—imposed PRS on each plaintiff[5] without direction to do so in each of their judicially imposed sentences.

Defendants contend that, at the time DOCS imposed PRS on the plaintiffs in each of these actions, courts had not clearly established that administrative imposition of PRS on a defendant whose judicially imposed sentence had not included PRS violated the defendant's due process rights. Defendants are correct, since DOCS imposed PRS on each plaintiff in these actions before the Second Circuit decided *Earley* on June 9, 2006.

Plaintiffs urge that the Supreme Court's decision seventy years earlier in *Wampler* was sufficient to establish this right. However, the Supreme Court in *Wampler* held that a clerk of court violated a defendant's constitutional rights by adding a provision to a sentence that a judge had not included at sentencing. 298 U.S. at 464-65. There, the clerk acted at the informal direction of the sentencing judge, whereas defendants in these actions imposed PRS on these plaintiffs pursuant to a state statute that required that their sentences include a mandatory period of PRS. *Id.* at 465; *see also Scott*, 2009 WL 928198, at *5 n.2 (distinguishing *Wampler* on similar grounds); *Rodriguez*, 2010 WL 438421, at *6 (same).

Lending further support to this conclusion, New York state courts repeatedly upheld DOCS's administrative imposition of PRS on individuals when their sentencing courts failed to provide for PRS in the years leading up to the Second Circuit's decision in *Earley*.[6] *See, e.g.*,

---

[5] Although the *Hardy v. Fischer* action is putatively a class action, no class has been certified. In order for the *Hardy* complaint to survive this motion to dismiss, the allegations of at least one named plaintiff must state a claim for relief. *See Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994); *see also* Fed. R. Civ. P. 23(a)(3); *Sinclair v. Goord*, No. 07 Civ. 1317, 2009 U.S. Dist. Lexis 67901, at *23 (N.D.N.Y. Mar. 10, 2009) (denying motion for certification of a class of individuals on whom DOCS imposed PRS after denying the named plaintiff's claims).

[6] Defendants correctly note that several New York state courts continued to uphold administrative imposition of PRS in the wake of *Earley*, until the state Court of Appeals decided *Garner* and *Sparber* on April 29, 2008. *See, e.g.*, *People v. Collado*, 849 N.Y.S.2d 558, 559, 47 A.D.3d 547 (1st Dep't 2008); *People v. Lingle*, 825 N.Y.S.2d 12,

*Deal v. Goord*, 778 N.Y.S.2d 319, 320, 8 A.D.3d 769 (3d Dep't 2004) ("Inasmuch as petitioner was sentenced to a determinate sentence for his commission of a violent felony in 1999, a period of postrelease supervision [was] automatically included in his sentence by statute." (quotation and citation omitted)); *People v. White*, 744 N.Y.S.2d 924, 924-25, 296 A.D.2d 867 (4th Dep't 2002) ("Postrelease supervision is mandatory for determinate sentences and is automatically included in the sentence. Where, as here, the court fails to specify a period of postrelease supervision, the period 'shall be five years.'" (quoting N.Y. Penal Law § 70.45)).

Furthermore, every court in this Circuit that subsequently has considered the argument that *Wampler* clearly established the right not to have PRS imposed by an administrative agency has rejected it. *See, e.g., Scott v. Fischer*, No. 07 Civ. 11303, 2009 WL 928195, at *5 n.2 (S.D.N.Y. March 30, 2009); *Rivers v. Fischer*, No. 08 Civ. 8906, 2009 WL 3169966, at *4 (S.D.N.Y. Sept. 28, 2009); *Rodriguez v. Fischer*, No. 08 Civ. 4662, 2010 WL 438421, at *6 (E.D.N.Y. Feb. 3, 2010); *Sinclair v. Goord*, No. 07 Civ. 1317, 2009 U.S. Dist. Lexis 67901, at *13-*14 (N.D.N.Y. Mar. 10, 2009); *but see Knowles v. Johnson*, No. 08 Civ. 4741, 2010 WL 1050973, at *3 (S.D.N.Y. Mar. 23, 2010) (staying consideration of qualified immunity pending the Second Circuit's resolution of the then-pending appeals in *Scott*); *Santiago v. Fischer*, No. 09 Civ. 1383, 2009 WL 3852001, at * 5 (E.D.N.Y. Nov. 18, 2009) (rejecting defendants' assertion of qualified immunity for acts purportedly taken after the Second Circuit decided *Earley* without addressing *Wampler*).

---

34 A.D.3d 287 (1st Dept. 2006); *Matter of Garner v. N.Y. State Dept. of Correctional Servs.*, 831 N.Y.S.2d 923, 39 A.D.3d 1019, (3rd Dept. 2007), *rev'd* 10 N.Y.3d 358, 889 N.E.2d 467 (2008). Because DOCS imposed PRS on each plaintiff in these actions prior to the Second Circuit decision in *Earley*, the Court need not determine at this time whether the right to have PRS imposed by a judge was clearly established for purposes of defendants' qualified immunity after *Earley* but prior to *Garner* and *Sparber*.

Thus, this Court concludes that the right to be free from the administrative addition of PRS to plaintiffs' judicially imposed sentences was not clearly established prior to the Second Circuit's decision in *Earley* and defendants are accordingly entitled to qualified immunity.

B. Other Privilege

Coleman also brings due process claims against defendant parole officers Edward Del Rio, John Zwaryczuk, Barbara Cudney, Sharon Henry, and John Martinez for commencing and pursuing the violation of PRS proceedings against Coleman that led to his reincarceration on June 14, 2006, a mere five days after *Earley* was decided. (Coleman Compl. ¶¶ 14-18, 31-32.) However, the actions of those parole officers were privileged.

"[S]tate officials . . . are entitled to rely on a presumptively valid state statute . . . until and unless [the statute is] declared unconstitutional." *Vives v. City of New York*, 405 F.3d 115, 117 (2d Cir. 2005) (quoting *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102-03 (2d Cir. 2003). N.Y. Executive Law § 259-i(3)(a)(i) provides that

> [i]f the parole officer . . . shall have reasonable cause to believe that [a conditionally released person] has . . . violated one or more conditions of his . . . post-release supervision, such parole officer shall report such fact to a member of the board of parole, or to any officer of the division designated by the board, and thereupon a warrant may be issued for the retaking of such person and for his temporary detention in accordance with the rules of the board.

Here, whether Coleman actually violated the conditions of his PRS is not at issue, and there is no claim that the parole officers did not have probable cause to institute PRS violation proceedings against Coleman, even if that PRS was wrongly-imposed. *See Scott*, 2009 WL 928198, at *5; *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).

The Second Circuit has long recognized that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d

Cir. 1996)). Accordingly, Coleman's claims against Del Rio, Zwaryczuk, Cudney, Henry, and Martinez for any actions taken to reincarcerate him within a few days after the Second Circuit decided *Earley* fail for the additional reason that these defendants had probable cause to arrest and detain Coleman for violating his PRS, thus precluding liability pursuant to section 1983.

C. Declaratory Relief

Plaintiffs all seek "[a] judgment declaring that defendants have committed the violations of law alleged in this action" in addition to their claims for damages and—in the case of Hardy, Cross, and Smith—injunctive relief. (Hardy Compl. at 15; Graham Compl. at 12; Coleman Compl. at 9.) District courts enjoy "substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286; *see also* 28 U.S.C. § 2201(a).

In light of the Court's grant of qualified immunity to defendants from a suit for damages and the separate denial of plaintiffs' request for injunctive relief, no issues remain for adjudication, and thus the Court declines to exercise jurisdiction over the claims for declaratory relief. *See Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) (finding the district court justified in dismissing claims for declaratory relief when it had dismissed plaintiff's other claims); *see also Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) ("[T]he question [in determining whether a request for declaratory relief had become moot] in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*." (quotation and citation omitted, emphasis in original)).

## IV. CONCLUSION

The imposition by DOCS of PRS on plaintiffs did not violate "'clearly established . . . constitutional rights of which a reasonable person would have known,'" *Pearson*, 129 S.Ct. at

815 (quoting *Harlow*, 457 U.S. at 818), at the time DOCS imposed that PRS between February 2003 and the Second Circuit decision in *Earley v. Murray*, 451 F.3d 71. Defendants are thus entitled to qualified immunity for their roles in imposing PRS on these plaintiffs. Similarly, to the extent that Coleman brings claims against defendant parole officers Del Rio, Zwaryczuk, Cudney, Henry, and Martinez for actions taken immediately after the Second Circuit decided *Earley*, those actions were privileged. The Court has denied plaintiffs' claims for injunctive relief in a separate Order and Opinion dated today and has declined to exercise jurisdiction over the claims for declaratory relief. Accordingly, defendants' motions to dismiss the complaint in each of these three actions are granted.

Dated: New York, New York
March 31, 2010

SO ORDERED:

Sidney H. Stein, U.S.D.J.